So our first case is Moore v. Walton, 18-1868. Counsel ready? Ms. Wang, how are you? I'm doing well, thanks. Your Honors, Regina Wang on behalf of the appellant Troy Moore. I would like to reserve two minutes for rebuttal. Sure. Five minutes after the toilet in Troy Moore's cell erupted, contaminating his eyes and mouth with waste, Defendant Walton acknowledged Moore and then ignored his calls for help. She instead left him covered in human waste for eight hours. Moore timely filed a complaint but misspelled Walton's name by two letters. This case is about whether the District Court improperly dismissed Moore's amended complaint on the ground that it did not relate back. Could I stop you there for just a little housekeeping matter? Yes. And that is you just mentioned the amended complaint. And I want to hear from your adversary on this as well. But I believe that the other side raised a question of whether or not the amendment of the complaint was futile at the time it was filed. Am I correct about that? The other side has raised that as an argument, yes. Yeah. Was that raised at all below? Was futility argued at any point at the time of amendment or dependency in the District Court? No, it was not. So I would assume that we can regard that as being waived or forfeited? Yes, that's correct, Your Honor. Okay. Thank you. So, as I was saying, this case is about whether the District Court improperly dismissed Moore's amended complaint on the ground that it did not relate back. Because Walton did not receive notice within the default period provided by Rule 4M without considering any extension granted for good cause. Let me ask you, but I'm sorry. Have we actually adopted the applicability of Rule 4M in other cases? Specifically whether it includes the good cause extension? Yes. This Court is not expressly willed on that now. But we've had some cases where we seem to have applied it. Yes. Am I correct about that? Yes. There's another case where the Court mentioned that the period for service could include good cause extensions under 4M, even though it did not decide the issue at the time. And the District Court found good cause? Yes, it did. All right. So, yes. You've drawn me right to my next point, which is that Rule 15C requires that notice be provided within the period provided by Rule 4M. And Rule 4M, in turn, includes a default period and then also includes that if the plaintiff demonstrates good cause, the period for service must be extended. Right. And as Judge Sirica's question suggested here, there was a good cause determination and there was an extension granted on the record. Yes. And correct me if I'm wrong, please. It appears from the record that the 4M extension that was granted for good cause extended from the point the determination was made by the Court or extended to, actually, the physical service of the amended complaint upon the party to be added.  That's correct, Your Honor. Okay. So, where does that leave us here? The District Court found that there was good cause under Rule 4M, but then when it was determining whether the complaint related back in the motion for summary judgment, it seemed to think that it only included the default period under Rule 4M. How did he do that? He implicitly, and I'll emphasize that to be corrected if I'm wrong, he implicitly reversed his factual determination, didn't he? It appears that he didn't actually apply the relation back analysis at the motion to dismiss hearing. He simply said there's good cause under Rule 4M, therefore a motion to dismiss denied. On the motion for summary judgment, he was completing the full Rule 15C relation back analysis, and at that point he then looked to whether notice was provided within the period provided by Rule 4M, and then he only looked to the default period and did not then consider the good cause extension. But I'm still, isn't there at the very least a considerable tension between the earlier factual determination of good cause and the eventual ruling of the court at summary judgment? The court in that ruling, if I recall correctly, said that this is on its merits an appropriate Eighth Amendment claim, but it ultimately turned on whether or not there had been proper service. The question was whether the defendant had received notice within the period provided by Rule 4M. But in this case, as I think you've responded, that notice was received by the actual physical service of the amended complaint upon her, right? Yes. So the tension seems to be the legal error in not appreciating that the notice had to be provided within the full Rule 4M period, including good cause, which, as you noted, he had earlier found there was good cause. What about prejudice? Is there any prejudice to the defendant in this case? The defendant has not presented any evidence of prejudice. Well, there wasn't any hearing. There wasn't any discovery into that either, was there? As to the issue of prejudice, if defendant had desired further discovery on that issue, they certainly could have raised it in their briefing. When they were arguing for their motion for summary judgment, they could have argued there was prejudice because there is this issue that I require further discovery on or there's any other issue. But the only – Well, why should the party at that point not have relied on the earlier determination of good cause? Wouldn't it have been appropriate to simply assume, you know, I've obtained a good cause ruling and there's – service has been made and there's no reason to do anything further, right? Sorry, I think I'm misunderstanding your question. So you're saying on defendant's motion for summary judgment? Yeah. They could have relied on – but so the district court had found that there was no good cause. So – At summary judgment. At summary judgment, right. Sorry, the district court had earlier found there was good cause. Yeah. So – I mean, if we put aside summary judgment, we have to assume that the court determined that service was proper. Yes. Because he made a good cause, factual determination. Yes. And so along the way, we have a motion for summary judgment. And at that point, the district court reverses himself, really, on the good cause determination, right? The district court just never mentions good cause again. The district court seems to not think that good cause – Isn't that where we're left? Well, I think as Judge Sirica noted earlier, this court hasn't explicitly held that Rule 15, when it says within the period provided by Rule 4M, that that Rule 4M period includes good cause extensions. So – What are you asking us to hold? I'm asking you to hold that when – in Rule 15C's relation back analysis, the Rule 4M period includes extensions for good cause. And in this case, because the district court had found good cause, the district court should have considered that notice was, in fact, provided within the 4M period, and therefore, the complaint related back and was timely. And so we vacate or reverse the summary judgment decision? Yes. And we are further putting forth that the district court denied Moore's motion for summary judgment on the grounds that it was untimely. But had the district court actually considered his Eighth Amendment claim on its merits, Moore should have been granted summary judgment on that claim because the undisputed facts show that Defendant Walton, five minutes after his cell exploded, covering him in human waste, saw him, acknowledged him, and then ignored his calls for help. Oh, I'm sorry. But your opponent says that substantial risk hasn't been – is still at issue here and prejudice is still at issue here that haven't been decided. So is it proper for us to deal with it ourselves, or do we send it back and have a new judge make these determinations? So Defendant has not put forth any evidence to refute any of – Well, you've already said that, but it's still not clear to me why we shouldn't, as Judge Sirica suggested, simply vacate, send it back, and then afford Ms. Walton an opportunity to demonstrate prejudice before the district court, especially given the ambiguity or even contradictory nature of the rulings that were made by the district judge. If this court does not feel comfortable making the determination in the first instance, then remand would be appropriate. The district court also never considered Moore's motion for summary judgment on the merits because it denied that motion on timeliness grounds. So the district court should then have the opportunity to consider Moore's motion for summary judgment with the correct timeliness finding there. So we would send it back in the first instance to deal with the prejudice, and if you get beyond that, deal with your pending motion for summary judgment? So, sorry, so sending it back on the issue of prejudice, you would give then Defendant an opportunity to present evidence of prejudice. So the Defendant here, when it knew that it had lost on the good cause issue, certainly could have put forth an argument for prejudice and presented evidence or requested discovery on that issue, but that simply isn't a position that the Defendant has taken. So on the record before us, this court can already determine that Defendant has not shown any prejudice. Thank you. We'll see you back on rebuttal. Good morning. Good morning, Your Honors. May it please the Court, my name is Megan Burns. I'm here from the City of Philadelphia Law Department on behalf of Appellee Sajida Walton. We ask that this Court affirm the judgment that Mr. Moore's untimely amended complaint did not relate back. What was absent from my opposing counsel's argument and also in most of their briefing is the fact that Mr. Moore had the name, W-A-L-T-O-N, five months before the expiration of the statute of limitations and ten months before he actually amended the complaint. And that dovetails with our first threshold argument that the amended complaint was futile at that point based on undue delay. Do we look at the statute of limitations or do we look at the application of Rule 4M? We would look at the application of Rule 4M, Judge Sirica, but the fact that he had time to amend his complaint prior to the expiration of the statute of limitations, that plays into our argument that not only was the amended complaint should have been struck under Rule 15A because it was futile for failure to relate back under Rule 15C, but also under Rule 15A there's a reason to deny an amendment. Did you argue futility in the district court? We did not, Your Honor. But, and I will get to it. We did not, Your Honor. I would say that this Court has the ability to affirm on any basis that is apparent in the record and here we have undisputed facts that he had this information and he should have requested discovery within that five months period prior to the expiration of the statute of limitations. Was he pro se at the time? He was, Your Honor. And he tried to get a correction done, but somehow it got lost in the shuffle. So, Your Honor, it's vague. The record is vague as to when and how he actually requested that information. At the July 24, 2017 hearing, and that's the hearing where the district court retroactively found good cause, he had sua sponte given all of these service extensions on an untimely amended complaint without, you know, and to aid, hopefully, Mr. Moore in the obligations as an IFP plaintiff under Section 1915, he had granted all of these service extensions sua sponte after he amended the complaint. And then only after that, after Moore was served for two months, there was the motion to dismiss hearing on July 24, 2017, where he asked Mr. Moore, what efforts did you partake in to obtain Ms. Walton's correct name and identification and address prior to today? And he said at one point, at one point, that either him or the marshal's service had requested that information from the prison's HR department. So, just based on that one... Didn't the marshal's service at one point say, or maybe it was the city, we don't contact the HR department? Correct, Your Honor. It seems to me that there were numerous efforts made by Mr. Moore to at least assist in the service of the amended complaint and the party that was to be brought in. But that acting within the prison as he was, he was very limited in how he could go about this. It strikes me that this case is unlike any case I've seen or any of the cases that have arisen in other courts where it's... This is not a John Doe. This is two letters of a name that are wrong. And he got that, it seems, from someone at the prison. And no one seemed to help along the way to correct this. Your Honor, to that point, we did provide him the correct spelling of Walton for five months prior to the expiration of the statute. The city at that time was a non-party. So it is Mr. Moore's, pro se or not, obligation to expeditiously seek the identification of that party. And ultimately, the district court found that he should have requested discovery to do this. So there's a second pre-trial... Well, this happens while he's being moved around from one prison to the next, as a matter of fact. That's not in the record, Your Honor. I thought he was moved within a month from the, what is it, PIC to another facility. I stand corrected. I do think you're right on that. But at the same time, he still had five months to request that discovery once he found out that he saw when the city provided the service records and discovery. And the service records are really the logbooks of what you see when, you know, the lock and track. I'm sure you've seen that before in exhibits. But he understood at that point. On June 29, 2015, when he filed his motion for summary judgment, he understood at that time that he, in his motion for summary judgment, he wrote Walden, a.k.a. Walton. He was, you know, he understood at that time that it was a misnomer and he didn't do anything to correct that. What should he have done from custody at that point? He should have requested formal discovery from the city at that point, as the district court officially found later in his motion for summary judgment opinion. I would like to address. It strikes me that that's a rather odd response. Given the direction that our civil rules have gone in, that is, to try to minimize discovery, to try to utilize informal processes as opposed to formal discovery, when this is information that always resided with the city employer. Your Honor, to that point. All they had to do somewhat within the city was look into an employment file or an incident report and they obtained the correct information. We did that, Your Honor. Again, when we provided him that service record, the onus was on Mr. Moore to say, OK, the city is not providing me more information at this point. The city, again, was a non-party at that point. So when we provided that five months prior to the expiration of the statute of limitations, he had plenty of time to raise that issue with the district court. The district court at no point during the pretrial conferences said, you're not allowed to ask for discovery outside of this. You're not allowed to bring any of these issues to my attention. We follow court orders and we provided the discovery when asked. It provided the correct spelling of Walton. Mr. Moore understood that it was a misnomer and he did so with five months to spare before the expiration of the statute of limitations. The case Mala v. Crown Bay Marina, Judge Smith, I believe it's your case, where pro se plaintiffs are held to the same procedural standards as any other party in this case, or in any case, excuse me. So I believe that at that point it was incumbent upon him to say, listen, I need to find and ascertain the name and address through formal discovery. At that point, that would have triggered the city and to who has a high municipal practices, a high volume practice to put that in front of us. And we had an obligation to then respond. But at that second pretrial conference, when Mr. Moore did request that discovery, he requested the logbooks. He requested medical records and he also requested the video evidence. Interesting what happened to the video evidence. I can't speak to that, Your Honor. I understand that. I doubt that anybody can since it didn't exist. In fact, during part of the period when it should have existed, wasn't it a 30 day life it was supposed to have? Correct, Your Honor. And there is an affidavit from the prison officials saying that they had not preserved that. And I you know, it remains unknown as to what exactly happened. But they and I don't have the affidavit in front of me. But again, that's not a part of this case. So let's talk about prejudice. If if we decide that we should vacate or reverse the decision on summary judgment, what is the next step? Well, I know that our position is that you have all of the undisputed facts in the record to affirm on any basis. But what the next step is, is that we would have to go back and go to trial. My opposing counsel is correct that we didn't put forth an affidavit from Miss Walton when we filed the motion for summary judgment, because we thought we had such a strong excuse me. We thought we had such a strong statute of limitations defense. However, my opposing counsel says that they're entitled to summary judgment. And that's just not the case based on Young v. Quinlan. And also, hold on for just a second. I have the case. It's hard for me to pronounce Trevelyan, which is 765 Federal Appendix 785. You were on that panel. Basically, the knowledge of a substantial risk of serious harm is a question for the jury. That's an intent element. And you can't just plead intent. You can't just say on summary judgment, Miss Walton had intent. What Miss Walton did here was she according according. Do we know what she did here? Well, there are. They do put forth Mr. Moore does put forth uncontested facts that Mr. Moore banged on the door for a little while. The city agrees with all this. We didn't contest it. So I can't say whether we agree or not, but that's that's what the facts are for summary judgment. But we're saying that this would also records internal records that show that the flooding of the toilet may not have occurred until about six or six and a half hours after the plaintiff said it happens. So there are numerous factual disputes here as well. Sure. And I agree with you. But again, at the end of the day, it was it's undisputed. And, you know, from those logbook records that the toilet did flood. So at this point, the knowledge based on Young v. Quinlan, that is just something that, you know, Mr. Moore can't impute onto Miss Miss Walton based on these uncontested facts. There's no there's no there. You can't infer from the fact that she heard him speak. She turned away and she let other people out of the cell that she had knowledge that he actually was exposed to human waste. So at that point, we would need to go to trial on that if you remand. But however, I you know, the city's position is that that is not necessary in this case. I'd like to go back to I believe it was Judge Smith at the very beginning of my opposing counsel's argument, where they claimed that we had waived our first threshold argument that the untimely amended complaint was futile. There there was no waiver in this case. Your honors. There was no defendant present in that case at that point to contest the filing of the amended complaint. So I there was nobody there to, you know, raise that issue. And again, you can affirm on any basis in the record to that point. I will I will point out the case. Arthur V. Maersk for 34 F third one ninety six. We did cite it in our briefs, but for a slightly different proposition, I'll caveat my citation to this. It didn't ultimately go our way, but it has some good dicta that I'd like to to read to the court. It says upon later realizing that an amendment was delayed, which we are arguing here, that Mr. Moore had five months with which to get the address. The district court could have vacated its order granting lead to amend and then struck the amended complaint. And that's what we're arguing, what the district court should have done here with the benefit of a full record. After summary, after our summary judgment motions, what prejudice, if any, does your client suffer here? So prejudice is is defined as a delayed ability to defend. And we have several uncontested facts in the record in and of itself isn't enough. Is it not? Well, the delay, I believe the delay can have. Yes. Yes. The fact that it's the consequences. Correct. That would have to be produced by your client. Right. There is Third Circuit case law that says the passing of the statute of limitations itself is not, you know, oh, the statute passed. Then that means prejudice. No, it is the inherent delay from from the time that Mr. Moore filed the original complaint. Three and a half years had passed. She can't gather witnesses now. She had left the prison employ seven months after the incident. And then this is an isolated incident that didn't last months long. So it's more susceptible to a to a fading memory at this point. So that's that is my point on prejudice. And at the same time, I'd really like to point out the fact that prejudice is not Miss Walton's burden. It is Mr. Moore's burden. And that is, I believe that's in the Garvin case, the Singletary case. And perhaps the Arthur V. Maris case. I was trying to find it before I was called up to to argue today. But it is in the case law that is actually plaintiff's burden to prove absence of prejudice. Under the Rule 15C analysis, you have to prove notice and absence of prejudice. And here there's just simply not in the record to contest the uncontested facts that so much time had passed between the original complaint and the amended complaint. Preserving that tape would have helped, right? Excuse me, Your Honor? Preserving that tape would have been helpful. I can't speak to that, Your Honor. It's not currently part of the briefing. It might have even been helpful in identifying who Miss Walton or Walden, if you're a Thoreau fan, happened to be at that time, but it wasn't available. Your Honor, I can just say that we have a sworn affidavit from PIC. I believe it says that the video evidence had not been preserved because they hadn't had a grievance within the 30-day period that had Miss Walton's name attached to it. And without that proper grievance, then they destroy video evidence as a matter of course after 30 days of the incident. So if I just use a little bit more time to conclude, this case is just not the test case for this novel issue before this court today. Mr. Moore had five months with- What novel issue? The incorporation question? Sure. I tend to call it the expansion rule. It's whether any good cause extensions also, per Miss Walton or any sort of defendant to receive notice of a complaint, also extends the period from which you need to prove the look-back period, as I call it in my briefs, with which to impute notice to a defendant under Rule 15C. And here the exception would swallow the rule almost on a case where Mr. Moore had plenty of time to amend his complaint. He understood that Miss Walton was- or Walden was actually Walton in his June 29, 2015 motion for summary judgment and still didn't proactively seek her name and her identity as was his burden. So with that, Your Honors, I thank you for your time and I ask that you affirm the district court. Thank you very much. Thank you. Is the prejudice burden yours? It is our burden, but there simply is no evidence of prejudice. And although it is our burden to show there is no prejudice, it is certainly- there is no prejudice. And the response- sorry, opposing counsel had the opportunity to- or rather, Miss Walton had the opportunity to come forth with anything to suggest that there was prejudice. So we've asserted there's no prejudice and there's nothing to refute that point. And opposing counsel has just acknowledged up here that if the complaint was indeed timely, then this case should go to trial. They've admitted that the facts in the record are undisputed, that she saw him with human extrament- that Mr. Moore saw- or Walton saw Mr. Moore with human extrament on him and the outstanding issue is just her intent, so it's unclear how further factual development or further witnesses would help her on that point. So on this record, we still contend that Mr. Moore's motion for summary judgment should be granted, but if this court feels uncomfortable granting him summary judgment, it can then remand on the issue of whether Miss Walton had the requisite intent. If there are no further questions, it will be my remaining time. Thank you. Thank you very much. And we'd like to thank Georgetown Law School and counsel for their efforts. Professor, thank you very much. Your pro bono efforts are greatly appreciated. Indeed. I thank all counsel. We'll take this matter under advisory.